ELIZABETH E. O'DANIEL *v.* THE BAKER'S UNION OF WILMINGTON.

Possession to be adverse must be upon a claim of right or title. If it be taken furtively or secretly, it will not be adverse in law. If acquired openly and publicly by one of two owners of adjoining lands in erecting a building immediately on the verge of his above the surface of the ground, but by digging a cellar and laying the foundation and building one of the walls of it partly within the limits and entirely below the surface of the adjoining lands, the possession will be adverse against such adjoining owner, and if held uninterruptedly under a claim of right, it will after twenty years have ripened into a good title; and the adjoining owner after that in erecting a house on his land will have no right to build his cellar wall upon the foundation of it.

If it be a party wall in the City of Wilmington, although not originally erected as such, the adjoining owner will have no right to build on the foundation of it without first complying with the provisions of the city charter on the subject.

Assuming it to be a party wall (the jury may presume a wall standing twenty years to have been laid in due form) and the adjoining owner has complied with all the regulations and requirements of the statute, and has thereby acquired a right to use such wall and foundation, it will not exempt him from the obligation to use and exercise all proper care and caution to prevent injury to the house of his neighbor, in building afterward adjoining them on his premises.

The all important question in the case is one of negligence, or no negligence, which is to be considered in the light of all the transactions in the

case; and the necessity for the exercise of care, caution and skill is enhanced in proportion to the danger to the adjoining property from the nature of the work to be done.  If reasonable care, caution and skill were exercised under the circumstances and in accordance with the nature and requirements of the undertaking, the defendant is not guilty of negligence, or liable for the injury.

THE plaintiff, and the defendant which was an incorporated company, were the respective owners of two lots adjoining each other, situated on the south side of Fourth between Walnut and Poplar Streets, in the City of Wilmington.  A former owner of the lot belonging to the plaintiff by the name of Elias England, had erected more than twenty years prior to the injury complained of in the suit, a brick dwelling house immediately on the division line of the two lots in question, with a cellar wall six feet in depth on that line of it in front on Fourth Street, but built below the surface of the ground and near the bottom of it with an irregular bench of cobble stone sloping into the ground of the adjoining lot as much as eighteen inches at its base, though not of uniform thickness through the whole length of it.   The person, however, who then owned the latter lot and who had but a short time before the injury complained of in the suit, sold it to the defendant, had no knowledge of that fact until after the sale of it to the defendant early in the year of 1871. Soon after the purchase of it the defendant through the agency and supervision of a building committee of the company, commenced the erection of a large brick warehouse adjoining the plaintiff's dwelling house, but of much greater depth and height than her house.  In digging the cellar of it, the excavation was made with a descending slope from the front towards the back part of the lot, to facilitate the carting of the earth from it, but extending in depth to the base or foundation of the plaintiff's cellar wall along the back portion of it; in which condition it was left by an entire suspension of the work upon it for five or six weeks, and during the time it was filled with water from the frequent rains which fell, and the earth at that

depth along the base of the plaintiff's wall consisting of a
spongy and springy sand or loan, which when wet became
a kind of quicksand, it penetrated the wall of cobble
stones which had been laid without mortar and the earth
beneath them and flooded her cellar which had before
always been dry, some times to the height of as much as
three feet. It was also proved that a load of bricks had in
the mean while been dropped and left lying across the gut-
ter in Fourth Street on the side next to her house, by the
servants of the defendants which obstructed the vent of
the water down it in heavy rains, and caused it to flow
over the pavement from the street into it at times. But af-
ter the resumption of the work upon the cellar of the defend-
ant and the excavation had been completed down to the
level of the base of the plaintiff's wall, and it was found
to project with a slope as before stated into the grounds
and lot of the defendant, as it was the desire and direction
of the latter to have theirs dug at least eighteen inches deeper,
the increased depth of it was commenced with an offset and
a bench of eighteen inches from the base of the plaintiff's
wall in the narrowest parts of it, but diminishing in other
and the broadest parts of it to a thickness of not more than
ten inches, owing to the irregular width and crooked out-
line of the slope of the plaintiff's wall; and that the
workmen of the defendant pursuant to the directions and
instructions of the building committee to do the whole
work well and carefully, so as not to endanger or injure
the plaintiff's property, which they thus knew to be
defectively built and constructed originally, proceeded
with care and caution to lay and build the foundation of
their wall with bricks in successive trenches dug at the
distances before stated and in lengths not exceeding eight
feet and two feet in depth, with a gradual increase in the
thickness of their cellar wall as it ascended and was built
over and upon the slope and ledge of the plaintiff's, and
from the top of that slope or ledge making the wall of the
plaintiff as originally constructed, the party or partition
wall of the two houses; but without underpinning the

foundation of it, or adopting any other method or precaution to support or secure it, although it was proved to be the practice of builders in that city when a cellar of greater depth is dug adjoining another, unless the building to which it belongs is next to a street or alley, to underpin the latter.  From the manner in which the cobble stones had been laid in the foundation of the cellar wall of the plaintiff, it appeared that they had been put there to remedy, as far as it was possible to do so by such means, the inherent defect of the natural formation on which the foundation of the plaintiff's wall originally rested.  It was also proved that before the work had been resumed upon the defendant's cellar, the walls of the plaintiff's dwelling had begun to settle and crack, which increased as the work on the warehouse of the defendant proceeded, until by the time it was completed, the front and western walls of it had settled and cracked so much that some of the doors of it could not be opened or closed, while in some places the cracks were not only wide enough to admit both light and air, but could be distinctly seen through from either the inside or the outside of the house.  The workmen of the defendant had in building the warehouse to remove the tin from a portion of the eaves and roof of the plaintiff's house by turning it back, but which they had omitted to replace in as good a condition as before, in consequence of which it had since leaked in that part of it.  The action was on the case and on the ground of the alleged negligence of the defendant in building their warehouse in such a careless, unskillful and improper manner as to occasion the injuries complained of to the dwelling house of the plaintiff.

*Patterson*, for the plaintiff.  The defendant had not exercised proper care and diligence, skill and precaution in the erection of their building to prevent doing the great injuries complained of to the house of the plaintiff, and she was, therefore, entitled to maintain the action and to recover ample damages for them.  In the first place the

work upon their cellar was suspended after it had in part been dug down to the foundation of the wall of the plaintiff, and was left to stand for weeks filled with water penetrating into and flooding her cellar also with water, during which time the same began to settle and to crack the walls of the house on the front and western sides of it, owing to the sandy and spongy nature of the ground on which that part of her cellar wall rested when wet, and particularly, when soaked and saturated as it then was with water; but in the next place they proceeded to dig their cellar along side of it eighteen inches deeper, and to build the wall of it, and of such a large and massive structure as their warehouse, on so much of the plaintiff's foundation as sloped downward from the division line into their lot, without even attempting to underpin, or shore it up, or taking any other precaution whatever to support it, or to prevent the still greater injuries which afterward occurred by reason of such negligence and misconduct on their part, to the same walls of her house. That portion of the plaintiff's wall, it was true, was within the limits of the defendant's lot, but it had securely and quietly remained there for more than twenty years prior to that time, and by continuous adverse possession and enjoyment of so much of the defendant's original premises, she had acquired a good and absolute legal title to it, and, therefore, the defendant was none the less liable for the consequences of such negligence in this case. *Sutton v. Clarke*, 1 *E. C. L. R.* 298. *Dodd v. Holme*, 28 *E. C. L. R.* 128. *Tower v. Chadwick*, 32 *E. C. L. R.* 142. *Jones v. Bird*, 7 *E. C. L. R.* 277. *Shearm. & Redf. on Negligence*, sec. 601.

*Bird*, for the defendant. The defendants on the facts proved were not liable, if the jury were satisfied that they exercised reasonable and ordinary care, skill and prudence in laying and constructing the foundation of the wall in question. And as the plaintiff from her position, occupying as she did her own premises at the time, must have had full knowledge of the fact from the commencement

of the work upon it, that the defendant was proceeding to dig such a cellar and to erect such a warehouse immediately adjoining her property and place of residence, and also well knew that the exterior surface of the wall of her house on that side of it, so far, at least, as it appeared above the ground, stood exactly on the verge of her land, it was her duty, and not that of the defendant to take whatever precautions might have been necessary in the case, to preserve and protect it from the principal injury, at least, complained of by her; and if she did not do so, the defendant was only bound to use reasonable and ordinary care in constructing their building (entirely within the limits of their own land) to avoid any detriment or injury to her property, but which would not require on their part such particular or extraordinary care as to impose upon them in such a case, either the duty or the expense of underpinning or shoring up her wall for her. *Massey v. Goyner*, 19 *E. C. L. R.* 321. In that case the circumstances were very similar to the facts in this in two respects, at least, for the plaintiff's wall was built in part on the foundation of the defendant's wall, and the latter was digging his cellar deeper than the plaintiff's, and was displacing in part the foundation of his own when the injury to the plaintiff's occurred. It had been decided as late as the year 1832 in England, that the owner of a house not ancient, could not maintain an action against the owner of land adjoining it, for digging away his land, so that the house fell in; and, therefore, where the declaration alleged that the plaintiff was lawfully possessed of a dwelling house adjoining to a dwelling house of the defendant, and that the defendant dug into the soil and foundation of his own house so negligently, and so near to the plaintiff's house that the wall of it gave way, on a demurrer to so much of it as alleged that he dug "so near to the plaintiff's house that the wall of it gave way," the defendant had judgment. But at the same time, the court doubted that if it had appeared that the plaintiff's house was ancient, or if the complaint had been that the alleged negligent

digging into the soil and foundation of his own house
by the defendant, had occasioned a falling in of the
soil simply of the plaintiff, and to which no artificial
weight had been added, whether an action would not
have lain.    *Wyatt v. Harrison,* 23 *E. C. L. R.* 205.
The counsel for the defendant in that case cited as an
authority the following ruling from 2 *Roll. Abr. Trespass*
(*J.*) *pl.* 1: if A be seized in fee of copyhold land adjoining
the land of B, and erects a new house on the confines of it,
and B afterward digs his land so near the foundation of it
that thereby the foundation of the house and the house
itself fall into the pit, yet no action will lie for it, because
it was A's fault that he built his house so near to B's land,
for by his act he cannot hinder B from making the best
use of his land.    But it seems that a man who has land
adjoining another's, cannot dig his land so near to it that
thereby the land of the other shall sink into the pit; and,
therefore, if the action had been brought for that, it would
lie.    And it was in reference to that authority cited in
that case, that Lord Tenterden C. J. after stating the
pleadings in it, said, the question reduces itself to this ;
whether if a person builds to the utmost extremity of his
land, and the owner of the adjoining land digs in his own
ground there so as to remove some part of the soil which
formed some part of the support of the building so erected,
an action lies for the injury thereby occasioned ?    What-
ever the law might be if the damage complained of were
in respect of an ancient messuage possessed by the plain-
tiff at the extremity of his own land, which circumstance
of antiquity might imply the consent of the adjoining pro-
prietor at a former time to the erection of the building in
that situation, it is enough to say in this case that the
building is not alleged to be ancient, but may, as far as
appears from the declaration, have been recently erected,
and if so, then, according to the authorities, the plaintiff is
is not entitled to recover.    It may be true that if my land
adjoins the land of another, and I have not by building
increased the weight upon my soil, and my neighbor digs

in his land so as to occasion mine to fall in, he may be liable to an action. But if I have laid an additional weight upon my land, it does not follow that he is to be deprived of the right of digging his own ground because mine will then become incapable of supporting the artificial weight which I have laid upon it. And this is consistent with the authority cited from Rolle's Abridgment. This court would observe in the case now before it, that there is no allegation in the narr that the building of the plaintiff was ancient, and, therefore, *non constat*, so far as the declaration and the pleadings in the case are concerned, that it was not of recent erection. But whatever the effect of that might be from the evidence, as it was not before the court, as that case was, on a general demurrer, whether the plaintiff's house was an ancient or recent building, the judgment of the court in that case in each and all of the aspects of the question suggested in it, was certainly a very strong authority in support of his contention, that under the facts and circumstances proved there was no legal obligation resting on the defendant to use extreme, extraordinary, or even special or particular skill, care, and caution, or anything more than reasonable and ordinary care and skill in excavating the earth, laying the foundation and erecting the wall and building in question wholly within the limits of their own premises.

But negligence could only exist, or be imputed to a party, when that degree of care and caution which the law required in any case was wanting ; and what degree of care and caution was required of the defendant in this case was the question, and the answer to it was that which he had just stated, reasonable and ordinary care, skill and caution merely, and no more than that which it had been proved was used by the servants of the defendant pursuant to the order and directions of their building committee, in the careful and prudent manner in which they proceeded to prepare the trenches and lay the wall of the company after they had discovered the nature of the

earth and the original character and condition of the foundation of the plaintiff. In the case of *Walter* v. *Pfiel*, 22 E. C. L. R. 334, Lord Tenterdon, C. J., said that it was then settled in the law that the owner of premises adjoining those pulled down must shore up his own inside, and do every thing proper to be done upon them for their preservation; still if the injury complained of was the result of negligence on the part of the defendant, he would be liable. But which negligence of course, could not have consisted in that case in the omission or neglect of the defendant to shore up or underpin the plaintiff's wall, for he had just said it was the duty of the plaintiff to have done that himself, as well as every thing necessary for him to do in order to preserve it from injury, resulting from any negligence nevertheless on the part of the defendant. And to show how clear and strong and irresistible is the legal right of a party to build on his own premises and entirely within his own limits, the defendant could not even have been restrained in equity from building the structure complained of, or any other reasonable improvement on its premises, on the ground that it could not be made without endangering the dwelling house of the plaintiff, if a bill had been filed for that purpose. *Lasala* v. *Holbrook*, 4 *Paige* 169. In the same case it was further ruled that where a person in the exercise of ordinary care and skill in making an excavation for the improvement of his own lot, and digs so near the foundation of a house on an adjacent lot as to cause it to crack and settle, he will not be liable for the injury if such excavation would not have injured the adjacent lot in its natural state. *Aliter* as to ancient buildings, or those erected on ancient foundations, and which by prescription are entitled to exemption from injuries resulting from such improvements on the adjacent lots, or as to those buildings which have been granted in their present situation by the owners of the adjacent lots, or by those under whom they derive their title. But as to the first branch of that qualification in relation to ancient

buildings, could it possibly apply under our statute, or even at common law, to adjacent lots in the city of Wilmington, or any other city in which whole streets are built up in solid blocks of adjoining houses in immediate connection with each other, so far as the respective party or division walls of them are concerned? As to the latter branch of the qualification, it could have no application to this case, because the defendants do not derive title to their lot from the plaintiff, or under any other owner of it since the erection of her house upon it. In the case of *Partridge v. Scott*, 3 *M. & W.* 228, Alderson, B. in delivering the judgment of the court said, "If a man builds his house at the extremity of his land he does not thereby acquire any right of easement for support or otherwise over the land of his neighbor. He has no right to load his own soil so as to make it require the support of his neighbor's, unless he has some grant to that effect. *Wyatt v. Harrison* is precisely in point to this part of the case, and we entirely agree with the opinion there pronounced." In that case the complaint was that the plaintiff owned certain dwelling houses and that the defendant so wrongfully, carelessly, negligently and improperly, without supporting and propping up the same, worked certain mines near them, in consequence of which the foundation of the buildings had been greatly weakened and injured, and the ground on which they stood had settled and sunk, by reason of which they were in great danger of falling down and were unfit for habitation or use. The same principle had also been ruled in this country, and in which the authority of the case cited from *Roll. Abr.* is recognized and approved in two leading cases strikingly similar in the facts constituting them to the case now before the court. *Thurston v. Hancock*, 12 *Mass.* 220. *Panton v. Holland*, 17 *Johns.* 92. And in both of which the right of the defendant to dig into his own ground deeper than the foundation of the cellar and building of his adjoining neighbor, by reason of which in the former case a substantial brick dwelling house be-

longing to the plaintiff had to be taken entirely down and rebuilt on other grounds, without any liability whatever for the consequential injuries complained of, was expressly recognized and affirmed by the court, provided it was done with reasonable care, skill and diligence on the part of the defendant.

As to the claim of the plaintiff to the absolute legal ownership of that portion of the foundation and slope of the wall which had been laid and built within the limits of the lot recently purchased and now owned by the defendants, by virtue of an adverse possession of twenty years, the principle of law on which she relied to sustain it, could not properly apply in such a case for several reasons; first, because the possession was originally acquired not only without the consent, but without the knowledge of the person who then owned the lot of the defendants, and which had since been entirely and effectually concealed from the knowledge of that owner, and buried and hidden six feet beneath the ground, until it was first revealed and discovered and made known to any one in the digging of the cellar of the defendants early in the spring of 1871. A possession even of twenty years must not only be acquired and commenced openly and in the light of day, but it must continue open and palpable during that time, and must not be obtained or maintained in a secret, furtive, or stealthy way, much less in a perfectly concealed and hidden manner during the whole of that time.    But in the next place that portion of it which in the mean while laid profoundly buried and covered up within the limits of the defendant's premises was as much, at least, in the possession of the then owner of them, as it was in the possession of the plaintiff; and being a joint, mixed or common possession, to say the least of it, it could not become adverse in its character on the part of either of them.    But in the last place, even, admitting for the sake of argument, that the plaintiff had become the sole and absolute owner of that portion of it by adverse possession acquired and continued, as it had

been, without the knowledge of the legal and actual owner of the land in which it lay imbedded, the plaintiff could only acquire title to so much as she during the time actually held and possessed, which was the mere wall itself and the ground on which it rested; while the other owned and possessed all the ground above and around it lying within his limits, and as such, would have an unquestionable right to use it and lay a wall in it without her leave or license, provided in doing so, he proceeded with ordinary care and caution to avoid doing injury to her possession or property.

*Patterson.* In one of the counts in the declaration the dwelling house of the plaintiff was alleged to be ancient, and in another as a dwelling house which she and those under whom she had derived her title to it, had owned and possessed twenty years prior to the injury complained of. And such being, not only alleged in the narr, but a fact proved in the case, all the authorities which had been cited on the other side concede that when such is the case the owner of it may maintain an action for such a consequential injury to it, provided the owner of the adjoining premises has failed to exercise due care and skill, and to take the proper precautions to prevent any injury or danger to it; and in no case is that obligation of taking the proper precaution to prevent the injury, or avoid the danger of it, shifted from the defendant to the plaintiff in the action, unless the former has given the latter timely notice and warning of what he is about to undertake, and what may be the consequences of it to the property of the plaintiff. And that must be actual notice, for the law will not presume without it, that the plaintiff could know the necessity of such precautions as well as the defendant, whatever may be their respective situations at the time with reference to the building. There was, therefore, no evidence, and no fact or circumstance proved in the case, to warrant the jury in presuming that the plaintiff, although she was then residing in the house, had

any knowledge whatever at that time of the necessity or propriety of underpinning, or shoring up, or supporting her wall, or in any other manner to forestall and prevent the injury then likely to result to it from the undertaking of the defendants. It was their job undertaken for their benefit, they knew the condition of the foundation of the wall as soon as they had unearthed it, and it was their duty to apprise her of it, and of the necessity of strengthening and supporting it in view of the use they were about to make of it, and it was their duty to fully admonish her of it, before they could require or expect her to do it. It was evident that such was their duty, if in any event, such was her duty; and it was great negligence on their part to neglect it, and still greater negligence after omitting to give it, to proceed with their undertaking without adopting the necessary precautions themselves to prevent the injury. The case of *Massey v. Goyner*, 19 *E. C. L. R.* 321, is a direct authority on this point, in which it was expressly ruled that where such notice is given to the plaintiff, the defendant is only bound to use ordinary care in the work. But even, if the plaintiff had received notice and had done the best she could to secure and protect her house, and it had nevertheless been injured by reason of any negligence on the part of the defendants, the latter would have been liable. *Walters v. Pfiel*, 22 *E. C. L. R.* 334. In regard to the other point first alluded to by him, that the plaintiff's house was an ancient, and not a recent building, or in other words, had been erected, at least, twenty years before that time, he would only say that whatever doubt or question there might be in reason as to the soundness of the distinction first taken in the authority cited from 2 *Roll. Abr.*, and referred to with more or less of sanction and approval in several of the subsequent cases also cited, between the undermining and falling of the soil itself simply, and of the foundations and walls of an ancient building or artificial structure with its additional weight erected upon it, all the cases, both English and American,

in which it had been at all adverted to, had, either clearly recognized, or declined to repudiate it, and had as distinctly declared without hesitation that for such an injury to an ancient building, at least, erected on the immediate confines of a man's land, the action will lie whenever it is occasioned by the want of due care and proper skill and precaution on the part of the defendant in such a case. But could the ruling or the *dictum* as to the undermining and settling of the foundation and walls of a building recently erected in such a position, be possibly held to apply even at common law, much less under our statutory regulations, to building lots in the City of Wilmington, where most of the houses are built in compact rows along the streets with their respective party walls immediately on the partition lines which divide the lots? Or could it with any truth or reason be said to be the fault or folly of any proprietor to so build his house at any time in that or any other city? The latest English case on the subject is that of *Hyde v. Thornborough*, 61 *E. C. L. R.* 248, decided in the year 1846, in which the plaintiff and defendant were the owners of adjoining lands, and the house of the plaintiff had been supported for more than twenty years by the adjoining land of the latter, who dug a foundation for a new building, but entirely on his own land, so near the house of the plaintiff that the earth gave way beneath it, and it fell down. The declaration alleged that it had been built twenty years when that occurred, and Parke, B., charged the jury that if it had been so supported twenty years and both parties knew it, the plaintiff had a right to such support as an easement, and the defendant could not withdraw that support without being liable in damages for any injury that the plaintiff might sustain thereby, which damages should be such as to put the plaintiff in the same state in which he was before, but the jury should not give him a new house for an old one. And the same principle was recognized and ruled in the Supreme Court of the State of New York in 1853. *Farran v. Marshall*, 19 *Barb.* 380.

As to the plaintiff's adverse possession of the *locus in quo*, or so much of the defendant's lot and ground as was occupied by that portion of the foundation and wall of her house which extended into it, the inception of it could not in the nature of things have been in a secret or furtive manner, as cellars are not dug, and the foundation walls of such houses are not laid in the dark, or in a single day, and could not possibly have been done in a covert, concealed or hidden way; and if the objection which had been taken to it on the ground that in a few weeks or months after it was built, it had necessarily been filled in and covered up with earth, and had remained so until the defendant's warehouse was begun, was good and available against it, then in no such case could any person ever acquire a legal title to the foundation and walls of his house beneath the surface of the ground, (or above either, if that were so,) by adverse possession, however long it might continue. The fatal consequences which would follow the recognition of such a doctrine, was sufficient to show, not only the fallacy, but the utter absurdity of it. And the plaintiff having thus acquired the indisputable title and ownership of that particular portion of the foundation and wall by a peaceable and continuous adverse possession of it, and of the ground on which it rested below, the defendant, even if it was admitted that he was the owner of all above and around it within the limits of his lot, had no right to build and erect upon it either in whole or in part the wall of such a large and heavy warehouse without strengthening and securing the original defects and insufficiency of it to sustain the additional weight of such a superstructure, when erected upon it.

*The Court, Gilpin, C. J., charged the jury,* after recapitulating the facts proved and stating the alleged grounds of action and of defence of the parties respectively, that it is a well settled rule of law that continued, uninterrupted and adverse possession of land for twenty years and more, will make a valid title to the same. The possession must

have been adverse, i. e. upon a claim of right or title. If the possession was taken furtively or secretly, it would not be adverse in law, and would not acquire a title. If the possession was acquired openly and publicly, and held uninterruptedly under a claim of right, it would after twenty years, have ripened into a good title. But it is contended that Mrs. Sharpe, the owner of defendant's lot when plaintiff's house was built, had no notice at the time that Elias England, the builder . of plaintiff's house, was digging the cellar or building on her adjoining land, and, under the circumstances, the possession cannot be held adverse. In answer to that, if you are satisfied from the evidence that England openly and publicly dug the cellar and laid the foundation for his house on the land then owned by Mrs. Sharpe, the latter who had opportunity to look after her interests, was bound to take notice of the fact that the wall or part of it was on her ground. If from the evidence, you are satisfied that the entire wall was on plaintiff's ground, or that she had title from adverse possession, the defendant had no right to build on it. If you are not satisfied that the wall was on her own land, but partly on hers and the defendant's, and therefore a party wall, although not originally erected as such, or although in fact a party wall, then the question arises if defendant had the right to build on plaintiff's foundation without first complying with the provisions of the charter of Wilmington ? The Chief Justice here read sections 74 and 75 of chapter 73 of the Revised Code, page 228, in relation to the appointment by City Council of surveyors and regulators of party walls and fences, their duties and the obligations imposed upon persons erecting party walls. If they had complied with the statute, they had a right to use said walls, but *not before* the value thereof had been assessed by the regulators and the same had been paid, or they would be liable to a penalty of fifty dollars. Assuming this to have been a party wall (a jury· may presume a wall standing 20 years to have been laid in due

form) and that defendants had had the regulators upon it and the value assessed and said value was paid to plaintiff by defendants, who thereby acquired a right to use said wall, this did not exempt them from the use and exercise of all proper care and caution in building upon it. A person may use his own property as he pleases with this simple qualification, that he does not injure his neighbor, may dig his cellar as deep as he pleases on his own margin, but must use care and skill to avoid injuring his neighbor's property.

The all important question in this case is one of negligence or no negligence. This is to be considered in the light of all the transactions in the case; and the necessity for the exercise of care, caution and skill is enhanced in proportion to the danger to adjoining property from the nature of the work to be done. What might be negligence in one case would not be in another, e. g., the same care would not be necessary in building upon a foundation standing upon clay or rock, as one upon sand or quagmire. The degree of skill depends upon the circumstances in each particular case, and of the risk of doing injury to the adjoining property, whenever there is absence of proper care or caution considering the circumstances of the case, there must be negligence, and if there is negligence the party guilty of it is answerable for damages. It is admitted by the defendants that they built their wall partly on the projecting ledge of the plaintiff's wall claiming it was on their land. If the foundation wall was on plaintiff's exclusive land by her paper title, or by adverse possession, defendant had no right to build on it, and if a party wall, had no right to build on it without first having the value regulated and paying the value, and if they did so, they were guilty of an unlawful act, and therefore did not exercise reasonable care and skill and are responsible for any injury resulting from it. You will also consider if any and what injury was caused by the damage to the roof, in the excavation for the cellar, in the erection of the building, and in the general

prosecution of the work, taking into consideration all the attendant circumstances. If reasonable care was used, defendants are not responsible, but if any time they failed in any material respect to exercise care and skill, they were guilty of negligence, and of the injury resulting from such negligence. If you consider defendants guilty, you are to assess damages commensurate with the injury sustained by plaintiff.

The plaintiff had a verdict for $2575.00.